NO. 12-03-00185-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
JOHN WESLEY HENSON,                              §                 APPEAL FROM THE 173RD
APPELLANT
 
V.                                                                         §                 JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                        §                 HENDERSON COUNTY, TEXAS
                                                                                                                                                            
OPINION
            Appellant John Wesley Henson appeals his convictions for attempted indecency with a child
and criminal solicitation of a minor. In five issues, he argues that the trial court improperly limited
voir dire and empaneled biased jurors, the evidence is both legally and factually insufficient to
support his convictions, and he was twice punished for the same alleged criminal act. We affirm in
part and reverse and render in part.
 
Background
            Appellant was charged by indictment with attempted indecency with a child and criminal
solicitation of a minor. The indictment included two enhancement paragraphs for prior felony
convictions. Appellant pleaded “not guilty” to the charges and “not true” to the enhancement
paragraphs. The matter proceeded to a jury trial, and Appellant elected to have the jury assess his
punishment. 
            The jury found Appellant guilty of both offenses charged. After hearing punishment
evidence, the jury found that the enhancement paragraphs were true and sentenced Appellant to
imprisonment for life as an habitual offender. Appellant filed a motion for new trial, which was
denied. This appeal followed.
 
Voir Dire
            In his first issue, Appellant contends that the trial court erred by disallowing proper questions
by Appellant’s attorney. These questions, according to Appellant, not only went to issues relating
to the exercise of challenges for cause (bias against Appellant), but also precluded him from
intelligently exercising his peremptory challenges. The State contends that the trial court’s ruling
was proper or, in the alternative, that Appellant has not shown harm.
Standard of Review
            The trial court has broad discretion over the jury selection process. Woods v. State, 152
S.W.3d 105, 108 (Tex. Crim. App. 2004). The primary reason for this is that voir dire could go on
indefinitely without reasonable limits. Barajas v. State, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002). 
            The propriety of a particular question posed during voir dire is left to the discretion of the
trial court and reviewed for an abuse of discretion. Id. A trial court abuses its discretion only when
a proper question about a proper area of inquiry is prohibited. Woods, 152 S.W.3d at 108. A
question is proper if it seeks to discover a juror’s views on an issue applicable to the case. Id. 
However, an otherwise proper question is impermissible if it attempts to commit the juror to a
particular verdict based on the facts. Id. 
The Record
            During voir dire, defense counsel addressed the burden of proof in a criminal case and asked
the following question: “Now, who all here – let’s start with this. Who all here thinks right now that
Mr. – Mr. Henson is guilty? Who feels that right now? If I had to vote right now.” In response to
counsel’s question, nineteen venire members out of seventy-three stated that if they had to vote at
that time, they would err on the side of the State. As counsel attempted to proceed with her inquiry,
the following exchange occurred:
 
[DEFENSE COUNSEL]:Okay. So if it’s 51 percent in your mind – correct me if I’m
wrong – but any of those that raised their hand, if it’s 51 percent
that you think that he’s guilty, that’s enough – that’s enough to
find guilty. Would anybody who raised their hand disagree with
that?
 
[PROSECUTOR]:Judge, I’m going to object. I think that 51 percent can be beyond
a reasonable doubt as far as the jury is concerned.
 
THE COURT:Sustained.
 
[DEFENSE COUNSEL]:Is that what – I’m just asking the question. I’m not passing
judgment on you. Anybody – if that is what you’re saying, 51
percent. Is there anybody – phrased that way, is there anybody
else that wants to join this group to say if it were 51 percent that
you thought he was guilty that you would say guilty?
 
[PROSECUTOR]:Judge, I’m going to again object. I don’t think that’s a proper
question. It’s asking the jury to draw a judgment on the case.
They don’t know any facts, and I don’t think that’s strike for
cause if they answer yes.
 
[DEFENSE COUNSEL]:Judge, I’m trying to find out in their minds how strong is that
burden of beyond a reasonable doubt.
 
THE COURT:Well, I’m going to sustain the objection.


Questions about Burden of Proof
            In a criminal case, the parties are entitled to question the venire to determine how the jury
would apply the State’s burden of proof. Woolridge v. State, 827 S.W.2d 900, 906 (Tex. Crim. App.
1992). The State’s burden of proof is an issue applicable to any criminal case because the factfinder
must apply that standard when determining guilt. Id. at 904. Moreover, a prospective juror’s
understanding of reasonable doubt “becomes more crucial to the intelligent exercise of either the
State’s or the defendant’s peremptory challenges because there is no definition to guide what could
be a juror’s skewed perception of the term.” Id. Great latitude should be allowed a party
interrogating a venire to enable his counsel to intelligently determine whether to exercise his right
of a peremptory challenge, which is a right that should not be unnecessarily limited. Id. at 905
(citing McGowen v. State, 163 Tex. Crim. 587, 290 S.W.2d 521, 524 (Tex. Crim. App. 1956)).
            Here, after nineteen venire members stated that they would find Appellant guilty if asked to
vote before hearing any evidence, defense counsel attempted to inquire further about how the jury
would apply the State’s burden of proof. Questions about the State’s burden of proof are proper;
therefore, defense counsel’s questions were proper. See id. at 904. Although the prosecutor’s voir
dire examination covered the burden of proof, defense counsel had not asked any questions on that
subject. Moreover, the prosecutor did not object to the form of defense counsel’s question.


 
Consequently, we hold that the trial court abused its discretion when it prohibited defense counsel’s
further inquiry about the State’s burden of proof. See Woolridge, 827 S.W.2d at 904 (abuse of
discretion where inquiry about burden of proof was proper, not repetitious, and not in an improper
form). 
Harm Analysis
            Because we have determined that the trial court abused its discretion by prohibiting proper
questioning during voir dire, we must conduct a harm analysis to determine whether the error
warrants reversal of the conviction. Gonzales v. State, 994 S.W.2d 170, 171-72 (Tex. Crim. App.
1999); see also Tex. R. App. P. 44.2. Defense counsel’s question was directed to identified members
of the venire—those who said they would err on the side of the State—and we therefore apply the
harm analysis that is traditionally applied to the erroneous denial of a defendant’s challenge for cause. 
See Janecka v. State, 937 S.W.2d 456, 470-71 & 471 n.9 (Tex. Crim. App. 1996). For the erroneous
denial of a challenge for cause, a defendant is harmed only if (1) he exhausts all of his peremptory
challenges, (2) he requests more challenges, (3) his request is denied, and (4) he identifies an
objectionable person seated on the jury on whom he would have exercised a peremptory challenge. 
Narvaiz v. State, 840 S.W.2d 415, 427 (Tex. Crim. App. 1992).
            Here, it is uncontroverted that Appellant used all of his peremptory challenges. However, the
record does not reflect that Appellant requested additional peremptory challenges. Moreover, 
although Appellant identifies three objectionable jurors in his brief, he did not do so in the trial court. 
Therefore, Appellant has failed to show harm from the trial court’s error. Accordingly, Appellant’s
first issue is overruled.



Juror Bias
            In his second issue, Appellant urges that the trial court erred by allowing jurors Middleton,
Yates, and Tidmore to be empaneled in the case after it was determined they had a bias in favor of
the State and against Appellant. 
Discussion
            “Bias” has been defined as “an inclination toward one side of an issue rather than to the other
. . . [which] leads to the natural inference that [a juror] will not or did not act with impartiality.” 
Anderson v. State, 633 S.W.2d 851, 853 (Tex. Crim. App. [Panel Op.] 1982) (citing Compton v.
Henrie, 364 S.W.2d 179 (Tex. 1963)). “Bias” has also been characterized as an inclination toward
one party. 43 George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice and Procedure
§ 35.71 (2001). Bias, by itself, is not sufficient for a challenge for cause. See Anderson, 633 S.W.2d
at 853. Instead, an appellant must show that the juror was biased to the extent that he or she was
incapable of being fair. See id. Ordinarily, counsel bears the burden of asking those questions during
voir dire that are calculated to bring out that information which might indicate a juror’s inability to
be impartial. Armstrong v. State, 897 S.W.2d 361, 364 (Tex. Crim. App. 1995). 
            Here, defense counsel introduced the subject of the State’s burden of proof and then asked,
“And if we took a vote right now, what would you say?” In response, nineteen venire members,
including Middleton, Yates, and Tidmore, responded that they would err on the side of the State.
Appellant maintains that by this answer, the three jurors exhibited a bias against him. Appellant
acknowledges that defense counsel did not object to these jurors being empaneled. 
            As a general rule, the failure to timely object at trial waives error on appeal. Boyd v. State,
811 S.W.2d 105, 113 (Tex. Crim. App. 1991). Even constitutional error can be waived by failing to
object. Wright v. State, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000). An exception applies where
the error is so egregious and created such harm that the defendant has not had a fair and impartial
trial. Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). In that instance, reversible
fundamental error occurs and can be raised for the first time on appeal. See id. Appellant maintains
that this exception applies here, arguing that “the record so conclusively establishes that Appellant
did not receive a fair trial from a fair and impartial jury that his constitutionally guaranteed rights
were violated.”



            We first note that although Appellant asserts generally that the record “conclusively
establishes” a constitutional violation, he does not develop his argument nor does he provide record
cites or any authority to support his conclusion. See Tex. R. App. P. 38.1(h). He also does not cite
any authority, nor or we aware of any, supporting his statement that an answer such as the one
complained of here establishes, as a matter of law, that a venire member is biased against the accused. 
Cf. Bryant v. State, No. 14-99-01373-CR, 2002 WL 27573, at *2 (Tex. App.–Houston [14th Dist.]
2002, pet. ref’d) (not designated for publication) (venire member’s statement that he had “a tendency
to lean toward police officers before he heard one word” not bias as a matter of law); Muniz v. State,
851 S.W.2d 238, 258 (Tex. Crim. App. 1993) (venire member’s statement that he would have to be
fifty-one percent certain or more before he could return affirmative answers to punishment issues was
internal conception of what “beyond a reasonable doubt” would mean and not a showing of bias
against appellant). Consequently, Appellant has waived this issue. See Wood v. State, 18 S.W.3d
642, 650 (Tex. Crim. App. 2000) (concluding appellant waived facial validity challenge to penal code
provision by failing to support argument with authority and failing to adequately develop his
argument); see also Tex. R. App. P. 38.1(h). Even absent waiver, however, Appellant’s argument still
fails.
            We first note that defense counsel’s question pertained only to how the venire would vote
before hearing evidence and does not address whether any member would be unable, after hearing
the evidence, to apply the presumption of innocence or the State’s burden of proof. Nonetheless, 
Appellant contends that a tendency to err on the side of the State reflects bias. However, in our view,
it could also reflect that the venire members perceived no relationship between defense counsel’s
question and their duties once they heard the evidence. Therefore, even if the answer showed bias
(an inclination toward one side or the other), it does not “lead[] to the natural inference that
[Middleton, Yates, and Tidmore] . . . did not act with impartiality.” See Anderson, 633 S.W.2d at
853. 
            The record reveals that the prosecutor informed the venire about the State’s burden of proof
and the presumption of innocence. He then asked, “Is everybody comfortable with that? Is everybody
comfortable with presuming him to be innocent and holding me to the correct standard? Everybody
okay with that?” No venire member responded in the negative. At trial, the State presented direct,
uncontroverted evidence of Appellant’s guilt. Finally, the jury charge included the following
paragraphs:
 
The burden of proof in all criminal cases rests upon the State throughout the trial and never
shifts to the defendant. The prosecution has the burden of proving the defendant guilty, and it must do
so by proving each and every element of the offense charged beyond a reasonable doubt, and if it fails
to do so, you must acquit the defendant.
 
                            . . . .
 
All persons are presumed to be innocent and no person may be convicted of an offense unless
each element of the offense is proved beyond a reasonable doubt. The fact that the defendant has been
arrested, confined, or indicted for, or otherwise charged with the offense gives rise to no inference of
guilt at his trial.
 
 
These portions of the charge properly instructed the jury on the State’s burden of proof and the
presumption of innocence. We must presume that the jury, including Middleton, Yates, and Tidmore,
followed these instructions. See Resendiz v. State, 112 S.W.3d 541, 546 (Tex. Crim. App. 2003). 
Nothing in the record indicates they did not. Appellant’s second issue is overruled.
 
Sufficiency of the Evidence
            In his third issue, Appellant contends the evidence is legally insufficient to support his
convictions. In his fourth issue, he contends the evidence is factually insufficient.
Standard of Review
            In reviewing a challenge to the legal sufficiency of the evidence, we review the evidence in
the light most favorable to the verdict to determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S.
307, 318-19, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); Young v. State, 14 S.W.3d 748, 753
(Tex. Crim. App. 2000). In reviewing the evidence for legal sufficiency, an appellate court does not
reweigh the evidence or substitute its judgment for that of the jury. King v. State, 29 S.W.3d 556,
562 (Tex. Crim. App. 2000). The jury is the exclusive judge of 1) the facts, 2) the credibility of the
witnesses, and 3) the weight to be given to the testimony of each witness. Penagraph v. State, 623
S.W.2d 341, 343 (Tex. Crim. App. 1981). As factfinder, a jury may reject any or all part of a
witness’s testimony. Id. 
            In conducting a factual sufficiency review, an appellate court must review all of the evidence,
but not in the light most favorable to the prosecution. Johnson v. State, 23 S.W.3d 1, 6-7 (Tex. Crim.
App. 2000). We must determine whether a neutral review of all of the evidence, both for and against
the challenged finding, demonstrates that a rational jury could have found guilt beyond a reasonable
doubt. Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). Evidence is factually
insufficient when evidence supporting the verdict, considered by itself, is too weak to support the
finding of guilt beyond a reasonable doubt. Id. Evidence is also factually insufficient when contrary
evidence is so strong that the beyond-a-reasonable-doubt burden of proof could not have been met. 
Id. at 484-85. Our evaluation should not intrude upon the factfinder’s role as the sole judge of the
weight and credibility given to any witness’s testimony. Cain v. State, 958 S.W.2d 404, 408 (Tex.
Crim. App. 1997). 
Attempted Indecency With a Child
            A person commits indecency with a child if, with a child younger than seventeen years and
not the person’s spouse, the person engages in sexual contact with the child or causes the child to
engage in sexual contact. Tex. Pen. Code Ann. § 21.11(a)(1) (Vernon 2003). “Sexual contact”
includes any touching by a person, including touching through clothing, of the anus, breast, or any
part of the genitals of a child. Id. § 21.11(c)(1). A person commits an offense if, with specific intent
to commit an offense, he does an act amounting to more than mere preparation that tends but fails to
effect the commission of the offense intended. Id. § 15.01(a). An attempt implies both an intent and
an active effort to carry out and consummate the intent or purpose. Flores v. State, 902 S.W.2d 618,
620 (Tex. App.–Austin 1995, pet. ref’d). Thus, “attempt” is more comprehensive than “intent.” Id. 
Circumstantial evidence may be used to prove an essential element of the offense charged. See
Wilson v. State, 654 S.W.2d 465, 467 (Tex. Crim. App. 1983). 
            Appellant first contends that there is no evidence that J.L. was younger than seventeen on
September 16, 2002, the date of the incident, or that J.L. was not Appellant’s spouse. However, the
record includes J.L.’s testimony that he was sixteen years old on September 16, 2002. J.L. also
testified that he had first met Appellant on September 13, 2002. This statement supports an inference
that J.L. was not Appellant’s spouse. See Meyers v. State, 737 S.W.2d 6, 8 (Tex. App.–Corpus
Christi 1989, no pet.).
            Appellant also contends that the record contains no evidence that he did any act amounting
to more than mere preparation as required by section 15.01(a). The court of criminal appeals has
recognized that there is an “imaginary line” that separates mere preparatory conduct, which is usually
noncriminal, from an act that tends to effect the commission of an offense, which is always criminal
conduct. Flournoy v. State, 668 S.W.2d 380, 383 (Tex. Crim. App. 1984). This necessarily creates
a “gray area” within which the imaginary line is to be drawn. McCravy v. State, 642 S.W.2d 450,
460 (Tex. Crim. App. 1980). The legislature did not intend to draw this line at the last proximate act. 
Id. Therefore, the fact that an appellant could have taken further action without actually committing
the offense does not render his actions nothing more than mere preparation. Sorce v. State, 736
S.W.2d 851, 857 (Tex. App.–Houston [14th Dist.] 1987, pet. ref’d). Where the imaginary line is to
be drawn depends upon the nature of the crime attempted and must be considered on a case-by-case
basis. See Gibbons v. State, 634 S.W.2d 700, 706-07 (Tex. Crim. App. 1982). 
            The record reveals that Appellant was seventy-seven years old and in poor health on the date
of the offense alleged. J.L. was a junior in high school. At trial, J.L. testified that on September 13,
2002, he was working at Food Rite in Seven Points and met Appellant for the first time. Appellant
asked J.L. if he wanted to make some money by helping him with some work at his house, and J.L.
responded, “I guess.” Appellant then gave J.L. directions to his house, and J.L. wrote them down. 
J.L. then carried Appellant’s groceries out for him, and Appellant asked him whether he was going
to come over and do some work. J.L. replied that he “didn’t know” and that he would try. 
            J.L. testified that the following day (September 14), which was a Saturday, Appellant was
waiting in the parking lot for him when he arrived for work. J.L. parked his vehicle about one
hundred yards from the front door of the store, where all Food Rite employees park. Appellant was
parked two or three spaces to the right, although there were “plenty” of spaces closer to the door
where Appellant could have parked. Appellant said J.L.’s name and called him over to his vehicle. 
Appellant asked J.L. why he did not show up that morning, and J.L. told him he had work to do
around his own house. He also told him he had to get to work and went inside the store to clock in. 
Appellant came inside the store and made a purchase. J.L. carried Appellant’s groceries out, and
Appellant again asked J.L. if he would come to his house to do some work. J.L. told him “probably
not” because he had to work the rest of the weekend, and Appellant drove away.
            Two days later (September 16), J.L. went to work and parked in the usual area. He went
inside the store, clocked in, and noticed Appellant in the store about five to six minutes later. 
According to J.L., Appellant said hello and asked him if he was going to come over. J.L. told him
that he would not be able to “make it.” J.L. carried Appellant’s groceries to his vehicle, which was
parked at the south end of the store. J.L. had not seen Appellant’s vehicle parked there before and
stated that Appellant’s vehicle was approximately two hundred yards from the front of the store. At
the time, J.L. noticed about four or five open parking spaces at the front of the store.
            When they reached Appellant’s vehicle, Appellant instructed J.L. to put the groceries on the
passenger’s side. Appellant got in on the driver’s side and, as J.L. opened the passenger door,
Appellant asked him to get in the truck because he wanted to talk to him for a minute. J.L. informed
Appellant that he had to get back to work. J.L. testified that Appellant then asked him if he wanted
to make “a quick ten bucks.” J.L. told him “he did not” and that he had to get back to work.
Appellant then said, “Well, I can’t get stimulation of my male area because of my diabetes so I want
to know if I can jack you off for $10.00.” J.L. immediately set Appellant’s groceries on the ground,
closed the vehicle door, said “no” in response to Appellant’s question, and walked back inside the
store.
            The acts recounted above that preceded Appellant’s request for J.L. to participate in a sexual
act amounted to no more than “mere preparation.” However, when Appellant offered J.L. ten dollars
“if I can jack you off. . . . ,” he crossed the imaginary line between preparation and attempt. 
Therefore, a rational factfinder could have found Appellant guilty beyond a reasonable doubt of
attempted indecency with a child. We hold that the evidence was legally sufficient to support
Appellant’s conviction. Appellant’s third issue, insofar as it pertains to attempted indecency with a
child, is overruled.
            According to the record, the defense offered no evidence to contradict any of the State’s
witnesses. For this reason, and in light of the State’s evidence discussed above, we hold that the
evidence supporting the verdict is factually sufficient to support Appellant’s conviction for attempted
indecency with a child. See Pegues v. State, No. 14-99-00378-CR, 2000 WL 1028968, at *3 (Tex.
App.–Houston [14th Dist.] July 27, 2000, pet. ref’d) (not designated for publication) (since evidence
was legally sufficient, evidence was also factually sufficient where defense offered no evidence to
contradict the testimony of the State’s witnesses) (citing Clewis v. State, 922 S.W.2d 126, 129 (Tex.
Crim. App. 1996)). Appellant’s fourth issue, insofar as it pertains to attempted indecency with a
child, is overruled.
Criminal Solicitation of a Minor
            The indictment in the instant case alleges, in pertinent part, that Appellant “request[ed],
command[ed], or attempt[ed] to induce [J.L.] to engage in specific conduct, to wit: to allow
[Appellant] to touch the genitals of [J.L.] that under the circumstances surrounding the conduct of
[Appellant], as [Appellant] believed them to be, would have constituted indecency with a child by
sexual contact. . . .” (emphasis added). Appellant contends that the record contains no evidence that
Appellant believed J.L. was younger than seventeen years of age. See Tex. Pen. Code Ann.
§ 21.11(a)(1) (indecency with a child occurs where the “child” is younger than seventeen years). 
Therefore, he concludes, the evidence is both legally and factually insufficient to sustain his
conviction for criminal solicitation of a minor.
            A person commits an offense if, with intent that indecency with a child be committed, he
requests, commands, or attempts to induce a minor to engage in specific conduct that, under the
circumstances surrounding the actor’s conduct as the actor believes them to be, would constitute the
commission of indecency with a child. See Tex. Pen. Code Ann. § 15.031(a) (Vernon 2003).


 To
determine whether the actor intended to commit indecency with a child, we must look to the specific
conduct the actor requested, including the circumstances surrounding the conduct as the actor
believed them to be. See id.; see also Hobbs v. State, 548 S.W.2d 884, 887 (Tex. Crim. App. 1977)
(op. on reh’g) (construing Texas Penal Code section 15.03, pertaining to criminal solicitation).
            The record reveals that J.L. met Appellant on September 13, 2002, and the alleged criminal
solicitation occurred on September 16. However, the record does not show that Appellant asked J.L.
his age or that J.L. told Appellant his age. Nor does the record contain a description of J.L.’s physical
appearance, his demeanor, or any other characteristic from which an inference could be drawn that
Appellant believed J.L. was younger than seventeen at the time of the offense. 
            J.L. testified that on September 14, he went to work after school and that Appellant was
waiting on him in the parking lot. Sue Yakesch, assistant manager at Food Rite, referred to the Food
Rite employees as “boys” and “kids.” She described J.L.’s job responsibilities as doing what needed
to be done, including the duties of a “[s]ack boy.” Dusty Wyman Bryant, a former Food Rite
employee, testified that he had a conversation with Appellant on September 25, 2002 during which
Appellant asked him if he was still in school. This testimony supports an inference that Appellant
knew some of the Food Rite employees were in school. However, the evidence does not support an
inference that all Food Rite employees were in high school or that Appellant believed J.L. was
younger than seventeen.
            In its brief, the State does not suggest that Appellant has overlooked any evidence in the
record. Instead, it urges that “the judge and jury were in a much better position to view the victim and
his appearance and in a much better position to determine whether the defendant was aware the victim
was younger than seventeen (17) years of age by circumstantial evidence.” We recognize that the
jury, as trier of fact, is permitted to make reasonable inferences from the evidence. See Garcia v.
State, 57 S.W.3d 436, 441 (Tex. Crim. App. 2001). However, where an appellant challenges the legal
sufficiency of the evidence to support an element of the crime for which he was convicted, we must
view all of the evidence in the light most favorable to the verdict and then determine whether, based
on that evidence and reasonable inferences therefrom, any rational trier of fact could have found this
element of the crime beyond a reasonable doubt. Guevara v. State, 152 S.W.3d 45, 49 (Tex. Crim.
App. 2004). We may not engage in supposition to substitute for what has actually found its way into
the appellate record. Cockrum v. State, 758 S.W.2d 577, 585 n.7 (Tex. Crim. App. 1988). Therefore,
we may not assume that because the jury found Appellant guilty, J.L.’s appearance at trial supported
an inference that Appellant believed J.L. to be younger than seventeen years on the date of the offense
charged.
            In the instant case, after reviewing the record in the light most favorable to the verdict, we
agree with Appellant that a rational trier of fact could not have found that Appellant believed J.L. to
be younger than seventeen years. Consequently, we hold that the evidence is legally insufficient to
support Appellant’s conviction and sustain his third issue relating to criminal solicitation of a minor. 
Because the evidence is legally insufficient to support the conviction, we need not address the portion
of Appellant’s fourth issue pertaining to factual sufficiency.
 
Double Jeopardy
            In his fifth issue, Appellant asserts that he was twice punished for the same criminal act in
violation of the double jeopardy provisions of the United States and Texas Constitutions. 
            In Burke v. State, 80 S.W.3d 82 (Tex. App.–Fort Worth 2002, no pet.), the appellant was
convicted of reckless aggravated assault and intoxication assault. On appeal, he challenged both
convictions on double jeopardy grounds and raised additional challenges to his aggravated assault
conviction. The Fort Worth court reversed his aggravated assault conviction because his guilty plea
was involuntary. Id. at 85-86. Moreover, the court concluded that, after the reversal, the appellant’s
double jeopardy issue was moot. In reaching its conclusion, the court agreed with the State’s
argument that “[t]he double jeopardy claim, if any, is not ripe until, or if and when, the State seeks
to punish Appellant for an aggravated assault arising from the same transaction and victim.” Id. at
86.
            Here, we have held that Appellant’s conviction for criminal solicitation of a minor was
supported by legally insufficient evidence. Consequently, that conviction must be reversed. 
Therefore, Appellant can no longer contend that he is being punished twice for the same offense. His
double jeopardy claim will not be ripe unless and until the State seeks to punish him for criminal
solicitation of a minor arising from the same transaction and victim. See id. Therefore, we hold that
Appellant’s fifth issue is moot and do not address it.
 
Conclusion
            Having overruled Appellant’s issues Appellant pertaining to his conviction for attempted
indecency with a child, we affirm the trial court’s judgment on this count of the indictment. Because
we have held that Appellant’s conviction for criminal solicitation of a minor is supported by legally
insufficient evidence, we reverse the judgment of the trial court on this count of the indictment and
render a judgment of acquittal. 
 
                                                                                                    SAM GRIFFITH 
                                                                                                               Justice
 
 
Opinion delivered May 25, 2005.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
(PUBLISH)